1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  CHARLES SMEDLEY, III,              )  Case No. 08cv1602-BTM (BLM)
                                       )
12                   Plaintiff,        )  **REPORT AND RECOMMENDATION FOR**
    v.                                 )  **ORDER GRANTING DEFENDANTS'**
13                                     )  **MOTION TO DISMISS**
    G. REID, et al.,                   )
14                                     )  **[Doc. No. 11]**
                     Defendants.       )
15  _____   )

16       This  Report  and  Recommendation  is  submitted  to  United  States

17  District Judge Barry Ted Moskowitz pursuant to 28 U.S.C. § 636(b) and

18  Civil Local Rules 72.1(c) and 72.3(f) of the United States District

19  Court  for  the  Southern  District  of  California.   On  August  29,  2008,

20  Plaintiff Charles Smedley, III, proceeding *pro se* and *in forma pauperis*,

21  filed  this  civil  rights  suit  under  42  U.S.C.  § 1983.   Doc.  No.  1

22  ("Compl.").   On  April  7,  2009,  Defendants  filed  a  motion  to  dismiss

23  Plaintiff's  Complaint.   Doc.  No.  11.   Plaintiff  did  not  file  an

24  opposition to Defendants' motion.  The Court set a hearing date of May

25  25, 2009, and took the matter under submission.  After considering the

26  Complaint and Defendants' Motion to Dismiss,  and for the reasons stated

27  below, this Court **RECOMMENDS** that Defendants' Motion to Dismiss be

28  **GRANTED** as follows.

**BACKGROUND**

Plaintiff's claims arise from actions allegedly committed by Correctional Officer G. Reid and Medical Technical Assistant Williams[1] while Plaintiff was an inmate at R.J. Donovan State Prison. Compl. According to the Complaint, Plaintiff and Defendant Reid were conversing on December 22, 2006 when, without warning, Defendant Reid closed a cell door on Plaintiff's head, causing Plaintiff significant pain. Id. Despite Plaintiff's protestations and those of another correctional officer, Defendant Reid refused to open the door, and Plaintiff's head remained stuck until another inmate freed him. Id.

Later that evening, Plaintiff was taken to the prison medical center, where Medical Technical Assistant Williams examined Plaintiff's head. Id. at 4. When Plaintiff explained that a correctional officer closed a door on his head, Defendant Williams allegedly stated he did not believe Plaintiff. Further, although Defendant Williams felt swelling around Plaintiff's head and jaw, Defendant Williams did not note this, and instead filed a "false" medical report that merely described Plaintiff as being in pain. Id.

Plaintiff alleges the above actions rise to the level of constitutional violations. Specifically, Plaintiff argues Defendants' conduct constitutes a denial of "adequate medical care" and "freedom from cruel and unusual punishment," in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution.[2] Id. at 3-4.

---

[1]Plaintiff does not supply Defendants' first names.

[2]Plaintiff fails to specify which Defendant committed which violations. Compl. at 3-4. Because Defendant Reid allegedly committed the door-closing act, but was not involved in providing medical care, and because Defendant Williams provided allegedly deficient medical care, but was not implicated in the door closing, the Court interprets Plaintiff's Complaint as ascribing "cruel and unusual punishment" to

1       After the events described above, Plaintiff was transferred to
2 Pleasant Valley State Prison in February 2007 and housed there until he
3 was paroled on April 27, 2007. Declaration of E. Franklin at 3;
4 Declaration of C. Huckaby at 3. Plaintiff subsequently was re-
5 incarcerated at R.J. Donovan, and filed the instant Complaint. Compl.
6 at 1 (cover page showing Complaint filed from R.J. Donovan). Plaintiff
7 apparently was released again in November 2008. Doc. No. 6.

8       Plaintiff seeks $200,000 in damages for Defendants' alleged
9 wrongdoing. <u>Id.</u> at 7. He does not seek injunctive relief. <u>Id.</u>
10 Plaintiff does not specify whether he is suing Defendants in their
11 individual or official capacities, nor does he specify in what manner
12 Defendants may have acted under the color of law. <u>Id.</u> at 2.

13 **DISCUSSION**

14       Defendants argue that Plaintiff's claims should be dismissed for
15 the following reasons: (1) Plaintiff failed to exhaust his
16 administrative remedies, (2) Plaintiff fails to state a claim under
17 Federal Rule of Civil Procedure (Rule) 12(b)(6), (3) Plaintiff's
18 Fourteenth Amendment claim is improper, as the allegations must be
19 presented under the Eighth Amendment, (4) insofar as Plaintiff sues
20 Defendants in their official capacities, the Eleventh Amendment
21 immunizes them from liability, and (5) insofar as Plaintiff sues
22 Defendants in their individual capacities, they are protected by
23 qualified immunity. Doc. No. 11-1 ("Def. Mem.").

24 ///

25 ///

26

27 Defendant Reid, and denial of "adequate medical care" to Defendant Williams. <u>See</u>
<u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th
28 Cir. 2002) (requiring court to liberally construe *pro se* plaintiff's complaint).

3

**A.    Failure to Exhaust Administrative Remedies.**

Defendants contend that Plaintiff failed to exhaust his administrative remedies before filing the instant action, and that Plaintiff's Complaint therefore must be dismissed.  Def. Mem. at 4-7. Although provided an opportunity to do so, Plaintiff did not file a reply to Defendant's Motion to Dismiss, and therefore did not directly address this argument.  Doc. No. 12 (order noting that Plaintiff had not yet responded to Defendant's motion to dismiss, as provided for by CivLR 7.1(d)(1)).[3]  However, in the Complaint, Plaintiff states that he "complied with mandates of PLRA with respect of attempting to exhaust available admistrated [sic] remedies.  However, Plaintiff was transferred to 'Pleasant Valley' state prison.  Plaintiff sought to track appeals and also wrote to director of corrections in making a good faith effort to comply to no avail."  Compl. at 6.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is a mandatory prerequisite to suit.  See <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) ("[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit"); <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001).  The PLRA requires "proper exhaustion," i.e.,

---

[3]Plaintiff failed to file an opposition to Defendants' motion to dismiss.  It therefore is within the Court's discretion to grant Defendants' motion as unopposed under Local Rule 7.1(f)(3)(c) of the Southern District of California.  Nonetheless, the Court reviews motion on its merits.

compliance with the state's "critical procedural rules" governing its administrative grievance or appeals procedure. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 93-95 (2006).   All available steps in the administrative process must be completed before a civil rights action is filed, and exhaustion during the pendency of the litigation will not save a claim or an action from dismissal.  <u>See</u> <u>McKinney v. Carey</u>, 311 F.3d 1198, 1200 (9th Cir. 2002).

The PLRA does not impose a pleading requirement.  Rather, failure to exhaust is an affirmative defense that defendants have the burden of raising and proving.  <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 215-18 (2007); <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).   The failure to exhaust administrative remedies "is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment."  <u>Wyatt</u>, 315 F.3d at 1119 (citing <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368 (9th Cir. 1988)).   When deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact, but it must assure that the plaintiff has fair notice of his opportunity to develop the record.  <u>Wyatt</u>, 315 F.3d at 1119-20 n.14.   If the court concludes that the prisoner has failed to exhaust all available administrative remedies, the proper remedy is dismissal without prejudice.  <u>Id.</u>

The California Department of Corrections and Rehabilitation ("CDCR") utilizes a four-step grievance process for prisoners seeking review of an administrative decision or perceived mistreatment.  <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1048-49 (9th Cir. 2006); Cal. Code Regs. tit. 15, §§ 3084.1-3084.6.  In most cases, the first step in the process requires the inmate to informally attempt to resolve his grievance with

1   the prison staff member.  Cal. Code Regs. tit. 15, § 3084.5(a); <u>id.</u> at

2   § 3084.5(a)(3)(G) (waiving informal resolution requirement for cases

3   involving "[a]lleged misconduct by a departmental peace officer").  If

4   unsuccessful, the inmate can complete an inmate appeal "602" form.  <u>Id.</u>

5   § 3084.5(b).  If denied at that level, the inmate can appeal to the

6   second level of review conducted by the institution head or his

7   designee.  <u>Id.</u> § 3084.5(c).  The third and final level of review, the

8   Director's level, is conducted by the CDCR's Director or her designee.

9   <u>Id.</u> § 3084.5(d).

10       1.   <u>Whether Plaintiff Was Required to Exhaust his Administrative</u>

11            <u>Remedies.</u>

12        As an initial matter, the Court must decide whether, under the

13   unusual circumstances of this case, the exhaustion requirement applies.

14   Although the exhaustion requirement pertains to plaintiffs who file

15   their complaints while in custody, plaintiffs who file complaints after

16   being released are not required to exhaust administrative remedies, even

17   when the suit concerns events that occurred while the plaintiff was

18   incarcerated.  <u>Talamantes v. Leyva</u>, 575 F.3d 1021, 1023-24 (9th Cir.

19   2009). Here, the events underlying Plaintiff's complaint occurred while

20   he was in custody, and he partly exhausted his administrative remedies

21   at that time.  Declaration of N. Grannis at 3; Decl. Franklin at 3

22   (describing Plaintiff's partial progress through the administrative

23   appeals process); <u>see also</u> <u>infra</u> at 8-11 (discussing Plaintiff's

24   incomplete exhaustion of remedies).  Plaintiff was released from custody

25   in April 2007.  Decl. Franklin at 3; Compl. at 1.  The record does not

26   reflect when Plaintiff returned to prison, but it is clear that in

27   August 2008, he was back in custody because he listed an R.J. Donovan

28   address when he filed his Complaint.  Compl. at 1.  In November 2008,

1    Plaintiff again was released from custody.   Doc. No. 6.   Absent any
2    evidence to the contrary, and in light of Plaintiff's duty to notify the
3    Court of address changes, the Court assumes that Plaintiff has not
4    returned to custody.   The question therefore is whether a plaintiff who
5    failed to exhaust his administrative remedies while in prison, or to
6    file a complaint upon his release, still is subject to the exhaustion
7    requirement when he files a complaint upon re-incarceration, and
8    subsequently is re-released.   Neither party raises or discusses this
9    issue.

10       The PLRA states that "[n]o action shall be brought with respect to
11   prison conditions under [42 U.S.C. § 1983], or any other Federal law, *by*
12   *a prisoner confined in any jail, prison, or other correctional facility*
13   until such administrative remedies as are available are exhausted."   42
14   U.S.C. § 1997e(a) (emphasis added).   When construing this provision of
15   the PLRA, the Ninth Circuit recently emphasized a court's duty to adhere
16   to the plain language of the statute: "It is well settled that, in a
17   statutory construction case, analysis must begin with the language of
18   the statute itself; when the statute is clear, 'judicial inquiry into
19   [its] meaning, in all but the most extraordinary circumstance, is
20   finished.'"   <u>Talamantes</u>, 575 F.3d at 1023 (quoting <u>United States v.</u>
21   <u>Carter</u>, 421 F.3d 909, 911 (9th Cir. 2005)).   Although Plaintiff later
22   was released, he was a prisoner at the time he filed the Complaint, and,
23   under the plain language of the statute, therefore was required to have
24   exhausted all available administrative remedies.[4]   42 U.S.C. § 1997e(a);

25

26       [4]Plaintiff does not allege that his release from prison prevented him from
27   exhausting his administrative remedies, and the Court therefore need not address this
     question.   In fact, after his April 27, 2007 parole (Decl. Franklin at 3), Plaintiff
     continued with the administrative appellate process, albeit improperly.   Decl. Grannis
28   at 3 (stating that the final-level appellate division rejected a July 25, 2007 appeal

Page v. Torrey, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (construing PLRA literally and holding that all prisoners are subject to the exhaustion requirement).   The fact that the PLRA does not specifically address Plaintiff's situation does not alter the Court's interpretation of the statute.   Talamantes, 575 F.3d at 1024 ("no mere statutory omission ... which it may seem wise to have specifically provided for, justifies any judicial addition to the language of the statute")(citing Jones v. Bock, 549 U.S. 199, 216-217 (2007)).   This reading of the statute also comports with the purposes of the PLRA: to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," and to "reduce the quantity and improve the quality of prisoner suits."   Woodford, 548 U.S. 81, 93-94 (citations omitted); see also Jones, 549 U.S. at 223 (purpose of PLRA is to "reduce the quantity of inmate suits").

The Court therefore finds that the PLRA required Plaintiff to exhaust his administrative remedies prior to filing suit.  So, the Court now turns to the issue of whether Plaintiff properly exhausted his administrative remedies.

2.   Plaintiff Failed to Exhaust his Administrative Remedies.

In order to have properly exhausted his claims, Plaintiff was required to exhaust all available administrative remedies, either by presenting his claims to all three levels of formal administrative review, or by receiving a response at an earlier level of review that rendered further presentation futile.   Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005).   Plaintiff filed two relevant appeals, one regarding each Defendant's alleged behavior, but failed to exhaust

from Plaintiff, for failure to first file at the intermediate step).

1    either.  Decl. Franklin at 3-4; <u>id.</u> Exs. A-C (copies of Plaintiff's

2    administrative appeals and responses).

3         Plaintiff's first-level appeal against Defendant Reid requested "a

4    verbal apology for the pain he caused me, and whatever disciplinary

5    action that can be placed on him." Decl. Franklin Ex. A at 1.  This

6    appeal was "partially granted," in that an inquiry was conducted into

7    Plaintiff's allegations.  <u>Id.</u> at 3.  Bypassing the second level of

8    review, Plaintiff appealed the partial grant directly to the third

9    level, where his appeal was denied for failing to complete the

10   intermediate step. Decl. Grannis at 3 (describing third-level rejection

11   of Plaintiff's complaint, log number RJD-07-00016); Decl. Franklin Ex.

12   A at 3 (showing this log number describes complaint against Defendant

13   Reid).

14        In some circumstances, a partial grant of a prisoner's first-level

15   administrative appeal may without further presentation exhaust the

16   prisoner's administrative remedies.  <u>Brown</u>, 422 F.2d at 937-39.  When

17   judging whether a partial grant constitutes exhaustion, a court looks

18   at, <i>inter alia</i>, the remedies requested by the prisoner.  <u>Id.</u> at 939-40

19   (administrative process need only consider remedies requested).  If the

20   partial grant fully addresses the requested remedies, and forecloses any

21   further possibility of relief, then further administrative appeals would

22   be futile, and the claims are exhausted.  <u>Id.</u> at 936-40.  If, on the

23   other hand, remedies remain available or unaddressed, exhaustion

24   requires the prisoner to pursue his claims through the administrative

25   appeals process.  <u>Id.</u>  A prisoner is required to exhaust "regardless of

26   the fit between [his] prayer for relief and the administrative remedies

27   possible." <u>Id.</u> at 935 (<u>citing</u>  <u>Booth v. Churner</u>, 532 U.S. 731, 739

28   (2001)); <u>Porter</u>, 534 U.S. at 524 .

9

1    In his administrative appeal, Plaintiff requested an inquiry into

2   Defendant Reid's conduct and an apology (Decl. Franklin Ex. A at 1), but

3   only received a statement from the prison that an inquiry had been

4   conducted into Plaintiff's allegations (id. at 3).  Some requested

5   relief, the apology, thus remained that may have been made available had

6   Plaintiff exhausted the appeals process.[5]  Brown, 422 F.2d at 939-40; id.

7   at 945 (Reinhardt, J., concurring in part and dissenting in part)

8   (citing apology as example of possible remedy for prisoner complaint).

9   "The obligation to exhaust 'available' remedies persists as long as *some*

10  remedy remains 'available.'"  Id. at 935 (emphasis in original).  Because

11  Plaintiff failed to present his claim against Defendant Reid at all

12  three levels of review, or to receive a decision that rendered further

13  presentation futile, this claim therefore is unexhausted.  See Tsehai v.

14  Schwartz, 2006 WL 3050819, at *3 (E.D. Cal. Oct. 25, 2006) (because

15  plaintiff requested apology from correctional officer who allegedly used

16  excessive force, and failed to receive apology or appeal request at all

17  levels, excessive force claim was not exhausted); Johnson v. Gregoire,

18  2008 WL 5156428, at *10 (W.D. Wash. Dec. 9, 2008)(prisoner's

19  administrative grievance form requested that prison employee have "more

20  positive attitude toward prisoners," but plaintiff offered no proof that

21  this occurred, and failed to pursue request at all levels of

22  administrative appeal; plaintiff's administrative remedies therefore

23

---

24      [5]Plaintiff also requested that Defendant Reid be disciplined by the prison.
    Decl. Franklin Ex. A at 1.  The warden's statement that an inquiry had been conducted
25   into Plaintiff's complaint, and that confidentiality prevented the prison from
    informing Plaintiff of the results of the inquiry exhausted this aspect of Plaintiff's
26   request.  Brown, 422 F.2d at 937-40 (under similar circumstances, request for
    discipline exhausted at second-level appeal because plaintiff would never know the
27   results of investigation, and thus would not know whether to appeal).  However, because
    the issue of the apology remained un-addressed, Plaintiff's claim against Defendant
28   Reid is not exhausted.  Brown, 422 F.2d at 936-40.

08cv1602-BTM (BLM)

were not exhausted).

Plaintiff's claim against Defendant Williams also is unexhausted. In his first-level appeal, Plaintiff requested that Defendant Williams "write the facts as they happened and not be rude to me.  I want his background checked and if possible his resignition [sic]."  Decl. Franklin Ex. B at 1.  In response, CDCR informed Plaintiff that his request partially was granted[6], but that "[i]f you feel you were wronged by custody you will need to complete a citizens [sic] complaint on the officer for the alleged assault you are reporting.  Please complete a CDC 7363 [form] so you can discuss your medical issues with a provider. The 602 [form Plaintiff filed] is not the format for reporting or requesting background checks or resignation." Id. at 3; Decl. Franklin Ex. C.  There is no evidence that Plaintiff filed the required CDC 7363 form, and Plaintiff did not appeal the first-level decision.  Decl. Franklin at 4; id. Ex. B at 3 & Ex. C.  Plaintiff therefore failed to exhaust his administrative remedies with regards to his claim against Defendant Williams.  Woodford, 548 U.S. at 93-95.

Further, Plaintiff essentially concedes that he failed to properly exhaust his claims, stating that he "sought to track appeals ... in [] a good faith effort to comply, to no avail."  Compl. at 6.  And, insofar as this statement is an argument that it was futile for him to proceed further with the administrative appeals process, that argument fails: courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Booth

---

[6]Although the record does not specify in what way Plaintiff's request was "partially granted," it may have been a CDCR employee's follow-up contact with Plaintiff and communication with a lawyer.  Decl. Franklin Ex. B at 3 (notes on form responding to first-level appeal).

11

1  v. Churner, 532 U.S. 731, 741 n.6 (2001).   Therefore, the Court

2  **RECOMMENDS** that both of Plaintiff's claims be **DISMISSED WITHOUT**

3  **PREJUDICE** for failure to exhaust.   Wyatt, 315 F.3d at 1120 ("If the

4  district court concludes that the prisoner has not exhausted nonjudicial

5  remedies, the proper remedy is dismissal of the claim without

6  prejudice").

7  **B.**   **Failure to State a Claim Under Rule 12(b)(6) of the Federal Rules**

8  **of Civil Procedure.**

9       Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants

10 seek dismissal of Plaintiff's complaint on the grounds that Plaintiff

11 fails to state a claim upon which relief can be granted.   Def. Mem. at

12 7-10.     A Rule 12(b)(6) motion tests the legal sufficiency of a

13 plaintiff's claims.   Fed. R. Civ. P. 12(b)(6).   Accordingly, the "focus

14 of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider v.

15 California Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

16 When reviewing a Rule 12(b)(6) motion, the court may consider the facts

17 alleged in the complaint and documents properly attached to it.   See Hal

18 Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19

19 (9th Cir. 1989).   The court also may consider documents the plaintiff's

20 complaint necessarily relies on and "whose authenticity no party

21 questions, but which are not physically attached to the [plaintiff's]

22 pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v.

23 City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).   However, the

24 court "*may not* look beyond the complaint to a plaintiff's moving papers,

25 such as a memorandum in opposition to a defendant's motion to dismiss."

26 Schneider, 151 F.3d at 1197 n.1 (emphasis in original).

27      For purposes of a Rule 12(b)(6) motion, the court must accept as

28 true all material factual allegations in the complaint, as well as

reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  See Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004).  When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  Erickson, 551 U.S. at 94; Thompson, 295 F.3d at 895.  This rule of liberal construction is "particularly important" in civil rights cases.  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).  However, the court is not permitted to "supply essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  Id.

In 2007, the United States Supreme Court departed from the more-liberal pleading rule established in 1957 and held that a claim may be dismissed pursuant to Rule 12(b)(6) if the plaintiff fails to articulate "enough facts to state a claim to relief that is *plausible on its face*."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added) (abrogating pleading standard established by Conley v. Gibson, 355 U.S. 41, 78 (1957)).  This new standard requires a plaintiff to plead a set of facts "plausibly suggesting (not merely consistent with)" the defendant's alleged violations.  Twombly, 550 U.S. at 557; Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (citing Twombly).  However, in announcing this rule, the Court also indicated that pleadings are not necessarily deficient merely because "recovery is very remote and unlikely."  Twombley, 550 U.S. at 556; Moss, 572 F.3d at 968; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[s]pecific facts are not necessary" to satisfy pleading requirements of FRCP Rule

8(a)(2)).

Recently, the Supreme Court clarified the parameters of the new plausibility standard in evaluating the factual sufficiency of a civil rights complaint. <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937 (2009). In <u>Iqbal</u>, the plaintiff alleged that in the aftermath of September 11, 2001, the United States Attorney General was the "principal architect" of a policy that subjected plaintiff and other Arab Muslims to "harsh conditions of confinement on account of his race, religion, or national origin" in violation of the U.S. Constitution, and that the Director of the FBI was "'instrumental' in adopting and executing" the policy. <u>Id.</u> at 1951. The Supreme Court determined that the complaint failed "to plead sufficient facts to state a claim for purposeful and unlawful discrimination against [the Attorney General and Director of the FBI]." <u>Id.</u> at 1954. In reaching this determination, the Court initially held that "bare assertions" which "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are to be disregarded. <u>Id.</u> The Court explained that '[i]t is the conclusory nature of the ... allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." <u>Id.</u>

After disregarding the conclusory allegations, the Court examined the remaining facts. <u>Id.</u> at 1951-52. The Court accepted as true Plaintiff's factual allegations and found that they *could* establish a discriminatory intent on behalf of the two defendants. <u>Id.</u> at 1951. However, the Court continued that the asserted facts also could support a non-discriminatory scenario in which a legitimate policy had a "disparate, incidental impact on Arab Muslims." <u>Id.</u> The Court then compared the two possibilities and concluded that "[a]s between that

'obvious alternative explanation' for the arrests ... and the purposeful, invidious discrimination respondent asks [the Court] to infer, discrimination is not a plausible conclusion." Id. at 1951-52 (citing Twombly, 550 U.S. at 567). The Court added that the complaint also was deficient because it did not "contain any factual allegation sufficient to plausibly suggest [Defendants'] discriminatory state of mind." Id. at 1952.

In July 2009, the Ninth Circuit applied the standard articulated in Twombly and Iqbal, again in the context of a civil rights claim against the government. Moss, 572 F.3d at 967-972. Moss concerned a group protesting against then-President George W. Bush, outside a restaurant in which he was eating. Id. 970-971. Citing safety concerns, the Secret Service and local police relocated the anti-President demonstrators but left a similarly-situated pro-President demonstration in place, as well as diners inside the restaurant. Id. The relocated protestors sued the Secret Service, alleging the agency pursued an unspoken policy of moving anti-President protestors only, in violation of the First Amendment's prohibition on viewpoint discrimination. Id. After discussing Twombley and Iqbal, The Ninth Circuit held that the plaintiffs failed to state a claim. In reaching this holding, the Ninth Circuit summarized the new pleading standard as follows:

> "A claim has facial plausibility, the [Supreme] Court explained, 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' 129 S.Ct. at 1949. 'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.' Id. (quoting Twombly, 550 U.S. at 556). 'Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.' Id. (quoting Twombly 550 U.S. at 557).

> In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

Moss, 572 F.3d at 969 (some internal citation and punctuation omitted).

Applying this standard to the claims before it, the Moss court held that although the facts did not "rule out the possibility of viewpoint discrimination, and thus at some level [] are consistent with a viable First Amendment claim ... mere possibility is not enough" to survive a motion to dismiss. Id. at 971-72; but see Al-Kidd v. Ashcroft, ---F.3d ---, 2009 WL 2836448, at *21-*24 (9th Cir. Sept. 4, 2009) (civil rights case distinguishing Iqbal and finding plaintiff pled sufficient facts to articulate plausible claim). With this new standard in mind, the Court assesses Plaintiff's claims.

1. **Plaintiff's Eighth Amendment Claim of Cruel and Unusual Punishment Against Defendant Reid.**

Plaintiff alleges that as he and Defendant Reid were talking, Defendant Reid, who was in sole control of Plaintiff's cell door, intentionally and without warning closed Plaintiff's head in the door. Compl. at 3. Plaintiff states that although his head remained trapped, causing him to scream from "excruciating pain," and another correctional officer to "scream[]" as well, Defendant Reid did not open the door. Id. Ultimately, another inmate forced the door open to release Plaintiff's head. Id. As a result of this incident, Plaintiff alleges "irreparable harm, from constant pain to needing a mood stabilizer especially for anxieties with authorities." Id.[7] Defendants argue that

---

[7] These events are further elaborated upon in a declaration attached to Defendants' memorandum in support of the motion to dismiss, and exhibits accompanying the declaration. Decl. Franklin at 3-4; id. Exs. A & B (copies of Plaintiff's prison complaints, specifying, inter alia, that Plaintiff originally stated that Defendant

because Plaintiff fails to provide enough detail regarding the incident,
the claim should be dismissed under Rule 12(b)(6).  Def. Mem. at 8-9.
Specifically, Defendants contend that Plaintiff fails to show Defendant
Reid's use of force was malicious rather than a permissible good-faith
effort to maintain or restore discipline, or that the use of force was
not required by the circumstances.  Id.

     "[T]he unnecessary and wanton infliction of pain constitutes cruel
and unusual punishment forbidden by the Eighth Amendment."  Hudson v.
McMillian, 503 U.S. 1, 5 (1992) (internal punctuation omitted) (citing
Whitley v. Albers, 475 U.S. 312, 319 (1986)); see also Gregg v. Georgia,
428 U.S. 153, 173 (1976) (Eighth Amendment violation when state inflicts
punishment "so totally without penological justification that it results
in the gratuitous infliction of suffering").  The core inquiry in
determining whether prison officials used excessive force in violation
of the Eighth Amendment is "whether force was applied in a good-faith
effort to maintain or restore discipline, or maliciously and
sadistically to cause harm."  Hudson, 503 U.S. at 6-7.  In determining
whether an official acted maliciously, a court must ascertain whether he
or she acted with "deliberate indifference" to an inmate's health or
safety.  Id. at 8.  While relevant, the degree of injury suffered by the
prisoner does not determine a claim's success.  Id.

---

Reid shut Plaintiff's head in the tray slot of the cell door, not the cell door
itself).  However, when evaluating Defendants' 12(b)(6) motion, the Court may not
consider these documents.  Williston Basin Insterstate Pipeline Co. v. An Exclusive Gas
Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation, 524
F.3d 1090, 1096 (9th Cir. 2008) (when adjudicating 12(b)(6) motion, court may "consider
only allegations contained in the pleadings, exhibits attached to the complaint and
matters properly subject to judicial notice"); Schneider, 151 F.3d at 1197
n.1.  This additional information is not attached to the complaint or contained in any
pleading, and no party has requested the that the Court take judicial notice of it.
Additionally, even if the Court incorporates the additional facts contained in the
Franklin Declaration, its recommendations remain the same.

08cv1602-BTM (BLM)

1    Here, the Court must accept as true that while Plaintiff and

2  Defendant Reid were talking, Defendant Reid suddenly closed the cell

3  door on Plaintiff's head.  Compl. at 3; Iqbal, 129 S.Ct. at 1950 (court

4  must accept non-conclusory factual allegations as true).  And, despite

5  the screams of Plaintiff and another correctional officer, Defendant

6  Reid left Plaintiff's head in the cell door until another inmate

7  released it.  Compl. at 3.  Under these facts, Plaintiff states a

8  plausible Eighth Amendment violation.[8]

9    Defendants contend that Plaintiff fails to show Defendant Reid's

10 actions were not a "good-faith effort to maintain or restore

11 discipline."  Def. Mem. at 8-9.  However, Plaintiff is not required to

12 plead the absence of a situation (such as a prison riot or other threat

13 of harm) which, if established, would excuse Defendant Reid's violent

14 action.  Rather, Plaintiff is required to plead facts which, if accepted

15 as true, would plausibly constitute a claim.  Twombly, 550 U.S. at 570;

16 Cholla Ready Mix, 382 F.3d at 973 (court required to view facts in light

17 most favorable to non-moving party).  Additionally, Defendant Reid

18 closed the door on Plaintiff's head as they "spoke to each other."

19 Compl. at 3.  Although a bare statement, this does not suggest a violent

20 or potentially violent situation.  Further, the fact that Defendant Reid

21 permitted another prisoner to release Plaintiff's head from the door

22 strongly indicates the absence of a dangerous situation requiring

23 Plaintiff's incapacitation.  Unlike Iqbal or Moss, the circumstances

24 here do not suggest a "more likely," non-constitutionally-violative

25

26    [8]In making this statement, the Court does not comment on the plausibility of the
   scenario described in the Complaint.  When adjudicating a motion to dismiss, a court
27 is required to accept as true even "unrealistic or nonsensical" allegations.  Iqbal,
   129 S.Ct. at 1951.  At this stage, the question is whether the facts as plead plausibly
28 suggest a claim, rather than whether the facts themselves are plausible.  Id.

08cv1602-BTM (BLM)

1    explanation.  <u>Iqbal</u>, 129 U.S. at 1951-522;  <u>Moss</u>, 572 F.3d 971-72.

2         Defendants also argue that Plaintiff fails to show that Defendant
3    Reid acted with malice.  Def. Mem. at 9.  However, malice can be imputed
4    to a defendant when the risk of harm is obvious.  <u>Hope v. Pelzer</u>, 536
5    U.S. 730, 738 (2002) (citation omitted).  The chance that an individual
6    would be harmed when a cell door is closed on his head is obvious, and
7    if that were not sufficient, Plaintiff "screamed" while trapped in the
8    door.  Compl. at 3.  <u>See Iqbal</u>, 129 S.Ct. at 1949 (although plaintiff
9    must provide more than an "unadorned, the-defendant-unlawfully-harmed-me
10   accusation," plaintiff is not required to plead "detailed factual
11   allegations"); <u>see also</u> <u>Buckley v. Gomez</u>, 36 F.Supp. 2d 1216, 1226 (S.D.
12   Cal. 1997) (denying defendants' motion for summary judgment because
13   material issue of fact existed as to whether prison guard maliciously
14   permitted plaintiff's head to remain in closed cell door); <u>Al-Kidd</u>, 2009
15   WL 2836448, at * 22 (civil rights plaintiff plead sufficient facts to
16   withstand motion to dismiss).  The Court therefore **RECOMMENDS** that
17   Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against
18   Defendant Reid for failure to state a claim be **DENIED**.

19        2.   <u>Plaintiff's Eighth Amendment Claim that Defendant Williams Was</u>
20             <u>Deliberately Indifferent to a Serious Medical Need.</u>

21        Plaintiff argues that Defendant Williams denied him "adequate
22   medical care" in violation of the Eighth Amendment.  Compl. at 3-4.
23   Specifically, Plaintiff contends that in the aftermath of the door-
24   closing incident, Defendant Williams conducted a medical inspection of
25   Plaintiff's head and jaw, and "although [Defendant Williams] felt where
26   the swelling was on my head and jaw, he only circled the two areas on
27   the report marked 'pain.'  He refused to take the exam any further
28   therefore his [medical report] was false."  Compl. at 4.  Plaintiff also

contends that Defendant Williams told Plaintiff he "could see no physical damage." Compl. at 3. Liberally construed, this constitutes an allegation that Defendant Williams was deliberately indifferent to a serious medical need. Erickson, 551 U.S. at 94 (court must liberally construe pro se civil rights plaintiff's claims). Defendants argue that Plaintiff fails to show a sufficiently serious injury or plead enough facts to constitute an Eighth Amendment violation, and that Plaintiff's claim therefore must be dismissed under Rule 12(b)(6). Def. Mem. at 9-11.

A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 105 (1976). There is both an objective and a subjective component to an Eighth Amendment violation. See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). The objective component generally is satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id.; Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment or treatment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain).

The subjective component requires the prisoner to allege facts showing a culpable mental state, specifically, "deliberate indifference to a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 836 (1994). "Deliberate indifference" is evidenced only when "the

official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Plaintiff meets neither the objective nor the subjective components of this test. Regarding the former, Plaintiff does not allege a serious injury that Defendant Williams failed to treat. Rather, Plaintiff merely alleges that Defendant Williams failed to note on the medical report the swelling on Plaintiff's head and jaw. Compl. at 4. Plaintiff does not allege, or present any facts to support such an allegation, that the swelling was substantial such that "the failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain." Clement, 298 F.3d at 904. Moreover, Plaintiff admits that Defendant Williams stated that he did not observe any physical damage. Compl. at 3. While Plaintiff asserts, without factual support, that Defendant Williams could feel swelling (id. at 4), the facts, rather than bare assertions, establish that Plaintiff has not alleged a serious medical condition that a "reasonable doctor would think worthy of comment." Doty, 37 F.3d at 546 n.3.

Plaintiff also fails to allege any facts indicating that Defendant Williams' conduct caused or exacerbated his injury. Although Plaintiff states that the door-closing incident caused "irreparable harm, from constant pain to needing a mood stabilizer especially for anxieties with authorities" (Compl. at 3), he does not connect this harm to Defendant Williams. See Moss, 557 F.3d at 971 (to survive Rule 12(b)(6) motion, complaint must directly connect defendants' actions with alleged harm); Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1183 (requiring a "causal connection" between official's act and harm

suffered).  Plaintiff also fails to explain how he would have suffered less, or received better treatment, had Defendant Williams' medical report noted "swelling" as well as "pain."  Accordingly, Plaintiff's claim is deficient because it fails to adequately allege an objectively serious medical need.

Plaintiff also fails under the subjective component of the test. "In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 302 (1991).  The indifference must be substantial, and inadequate treatment due to malpractice, or even gross negligence, does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 106. Plaintiff's claim is based on allegations that while Defendant Williams examined his head and jaw, he stated that he did not believe Plaintiff's explanation for the injury, stated he "could see no physical damage," refused to "take the exam any further," and then filed a false medical report by failing to include the swelling on Plaintiff's face.  Compl. at 2-4.  Assuming these allegations are true, they still do not constitute the "unquestioned and serious deprivations of basic human needs," or denials "of the minimal civilized measure of life's necessities" necessary for an Eighth Amendment claim. Rhodes, 452 U.S. at 347.

First, Plaintiff does not allege what further medical examination Defendant Williams was required to conduct.  Plaintiff's injury was to his head and jaw, and Defendant Williams inspected those.  Compl. at 3 (Defendant Williams "felt where there was swelling on my head & jaw"). Although Plaintiff believes that he required a more thorough examination, a difference of opinion regarding the preferred course of medical treatment does not constitute an Eighth Amendment violation.

1  <u>Gillen v. D'Amico</u>, 237 Fed.Appx. 173, 174 (9th Cir. 2007); <u>Sanchez v.</u>
2  <u>Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).  Similarly, Defendant Williams'
3  decision to omit "swelling" from the medical report may well reflect his
4  medical opinion that Plaintiff's swelling was not sufficient to merit
5  notation.

6      Second, even when combined with Defendant Williams' statement that
7  he thought Plaintiff lied about the source of his injuries (Compl. at
8  3), the alleged actions do not plausibly indicate a "wanton" infliction
9  of suffering betraying a culpable state of mind.  <u>Wilson</u>, 501 U.S. at
10 302 (in context of Eighth Amendment "the offending conduct must be
11 *wanton*") (emphasis in original).  Rather, the more likely explanation is
12 that in performing a limited exam and not indicating "swelling,"
13 Defendant Reid followed his judgment as a medical technician.  <u>See</u>
14 <u>Iqbal</u>, 129 S.Ct. at 1952 (granting motion to dismiss when complaint did
15 not contain "any factual allegation sufficient to plausibly suggest"
16 government actors' culpable mental state); <u>Moss</u>, 572 F.3d at 971-72
17 (same).

18     For the above reasons, this Court **RECOMMENDS** that Plaintiff's
19 Eighth Amendment claim against Defendant Williams be **DISMISSED WITHOUT**
20 **PREJUDICE.**  <u>See</u> <u>Ramirez</u>, 334 F.3d at 861 (court should grant a *pro se*
21 plaintiff leave to amend complaint "unless the pleading could not
22 possibly be cured by the allegation of other facts").

23 **C.  <u>Plaintiff's Fourteenth Amendment Claim.</u>**

24     Plaintiff asserts that Defendants' conduct also violated his
25 Fourteenth Amendment rights to "adequate medical care" and "freedom from
26 cruel and unusual punishment."  Compl. at 3.  However, the Fourteenth
27 Amendment's substantive due process protections only are implicated when
28 the detainee has not been convicted of a crime.  <u>Ingraham v. Wright</u>, 430

U.S. 651, 671 n.40, 673-74 (1977); <u>Jones v. Blanas</u>, 393 F.3d 918, 931
(9th Cir. 2004).  Because Plaintiff was a convicted prisoner at the time
of the allegedly unconstitutional actions, his claims arise solely under
the Eighth Amendment.   <u>See Ingraham</u>, 430 U.S. at 671 n.40; <u>see also</u>
<u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843 (1998) (quoting <u>United</u>
<u>States v. Lanier</u>, 520 U.S. 259, 272 n.7 (1997)) (finding that
substantive due process analysis is inappropriate when the claim already
is "'covered by a specific constitutional provision, such as the Fourth
or Eighth Amendment ...'").

As discussed above, Plaintiff's claims are covered by Eighth
Amendment's prohibitions against cruel and unusual punishment and denial
of medical care.   This Court therefore **RECOMMENDS** that Plaintiff's
Fourteenth Amendment claims be **DISMISSED WITH PREJUDICE.**

**E.    <u>Eleventh Amendment Immunity.</u>**

Plaintiff fails to state whether he is suing Defendants in their
individual or official capacities.  Compl. at 2 (check boxes indicating
whether Defendants sued in official or individual capacities left
blank).   To the extent Plaintiff sues Defendants in their official
capacities, Defendants correctly argue that they are immune from
liability for damages under the Eleventh Amendment.  Def. Mem. at 2.

"The Eleventh Amendment bars actions for damages against state
officials who are sued in their official capacities in federal court."
<u>Dittman v. California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999); <u>see also</u>
<u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (a suit
for damages against a state official in his or her official capacity is
a really a suit against the state itself, which is prohibited by the
Eleventh Amendment).   The only exception to this rule lies when a
plaintiff sues official actors for prospective injunctive relief.  <u>Flint</u>

1  v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007).

2      Here, Plaintiff requests only monetary damages, not injunctive

3  relief.  Compl. at 7.  Therefore, the Court **RECOMMENDS** that Plaintiff's

4  claims against Defendants in their official capacities be **DISMISSED WITH**

5  **PREJUDICE.**

6  **F.   Qualified Immunity.**

7      Defendants[9] contend that, insofar as Plaintiff sues them in their

8  individual capacities[10], they are protected by qualified immunity.  Def.

9  Mem. at 12-14.  Specifically, Defendants argue that because Plaintiff

10 has not articulated a constitutional violation, they are immune from

11 prosecution.  Plaintiff does not address the issue.

12     Qualified  immunity  shields  government  officials  performing

13 discretionary functions from liability for civil damages unless their

14 conduct violates clearly established statutory or constitutional rights

15 of which a reasonable person would have known.  Anderson v. Creighton,

16 483 U.S. 635, 638-40 (1987).  "Qualified immunity is 'an entitlement not

17 to stand trial or face the other burdens of litigation.'"  Saucier v.

18 Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S.

19 511, 526 (1985)).  This privilege is "an *immunity from suit* rather than

20 a mere defense to liability; and like an absolute immunity, it is

21 effectively lost if a case is erroneously permitted to go to trial."

22 Id. at 200-01 (quoting Mitchell, 472 U.S. at 526).  Thus, the Supreme

23

24     [9]While Defendants' moving papers reference a "Defendant Peterson" and a "First
   Amended Complaint" (Def. Mem. at 13), the Court will evaluate the claim to qualified
25 immunity as if asserted by Defendants Reid and Williams in relation to the claims
   alleged in Plaintiff's complaint.

26

27     [10]Although Plaintiff does not indicate the capacity in which he sues Defendants,
   the Ninth Circuit repeatedly has held that "a section 1983 suit against state actors
   necessarily implies a suit against the defendants in their personal capacities."
28 Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 973 n.16 (9th Cir. 1994).

Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Id.</u> at 201 (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (*per curiam*)).

Assessing qualified immunity is a two-step process. <u>Saucier</u>, 533 U.S. at 201. First, a court must consider whether "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." <u>Saucier</u>, 533 U.S. at 201. Second, the allegedly-violated right must be clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 201-02. If an officer makes a reasonable mistake as to what the law requires — i.e. the right is not clearly established — the officer is entitled to immunity. <u>Id.</u> at 202-03. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, --- U.S. ---, 129 S. Ct. 808, 818 (2009).

1.   <u>Plaintiff's Eighth Amendment Claim Against Defendant Reid.</u>

Interpreting the facts in the light most sympathetic to Plaintiff, Defendant Reid closed a cell door on Plaintiff's head without warning, and permitted it to remain there for an extended period of time despite the loud protestations of Plaintiff and another prison guard. Compl. at 3. As discussed above (<u>supra</u> at 16-19), when the facts are construed in this manner, they allege that Defendant Reid violated Plaintiff's constitutional right to be free from cruel and unusual punishment. <u>Hudson</u>, 503 U.S. at 6-7 (violation of Eighth Amendment when prison guard uses force "maliciously and sadistically to cause harm"). As Defendants apparently concede since they do not address it, this right is clearly

established.   See Watts v. McKinney, 394 F.3d 710, 711 (9th Cir. 2005)
(correctional officer should know that banging prisoner's head into wall
violated "clearly established" Eighth Amendment prohibition against
malicious and sadistic use of force); see also Buckley, 36 F.Supp. 2d at
1227 (denying motion for qualified immunity because factual question
existed   as   to   whether   defendants'   conduct   rose   to   level   of
constitutional   violation).     The   Court   therefore   **RECOMMENDS**   that
Defendants' motion to dismiss Plaintiff's claim against Defendant Reid
on qualified immunity grounds be **DENIED WITHOUT PREJUDICE.**

    2.   Plaintiff's Eighth Amendment Claim Against Defendant Williams.

    As   set   forth   above,   the   Court   has   recommended   that   the   Eighth
Amendment claim asserted against Defendant Williams be dismissed without
prejudice to state a claim.   See, supra at 19-23.   Because
there is no viable claim alleged against Defendant Williams, the Court
is unable to evaluate whether he is entitled to qualified immunity for
the   alleged   conduct.     Unless   and   until   Plaintiff   alleges   a
constitutional violation, there can be no determination regarding the
applicability of qualified immunity.   As stated by the Supreme Court, if
plaintiff   fails   to   plead   a   constitutional   violation,   "there   is   no
necessity   for   further   inquiries   concerning   qualified   immunity."
Saucier, 533 U.S. at 201.   Accordingly, the Court   **RECOMMENDS**   that
Defendants'   motion   to   dismiss   Plaintiff's   claim   against   Defendant
Williams on qualified immunity grounds be **DENIED WITHOUT PREJUDICE**.

**G.**   **Summary of Recommendations.**

    To summarize the foregoing, the Court recommends that:

(1) All of Plaintiff's claims be dismissed without prejudice for
failure to exhaust administrative remedies;

(2)   Defendants'   motion   to   dismiss   Plaintiff's   claim   against

1   Defendant Reid for failure to state a claim be denied without prejudice;

2       (3) Defendants' motion to dismiss Plaintiff's claim against
3   Defendant Williams for failure to state a claim be granted, and that
4   claim be dismissed with leave to amend;

5       (4) Plaintiff's Fourteenth Amendment claims be dismissed with
6   prejudice;

7       (5) Insofar as Plaintiff sues Defendants in their official
8   capacities, those claims be dismissed with prejudice under the doctrine
9   of Eleventh Amendment immunity;

10      (6) Defendants' motion to dismiss due to qualified immunity for
11  Defendant Reid be denied without prejudice, and;

12      (7) Defendants' motion to dismiss due to qualified immunity for
13  Defendant Williams be denied without prejudice.

14                          **CONCLUSION**

15      For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the
16  District Court issue an Order: (1) approving and adopting this Report
17  and Recommendation, (2) granting Defendants' Motion to Dismiss.

18      **IT IS HEREBY ORDERED** that any written objections to this Report
19  must be filed with the Court and served on all parties **no later than**
20  **October 20, 2009**.   The document should be captioned "Objections to
21  Report and Recommendation."

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

28

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than November 10, 2009**.   The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.   See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

DATED:   September 29, 2009

BARBARA L. MAJOR
United States Magistrate Judge

08cv1602-BTM (BLM)